UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUNNEN PRODUCTS COMPANY, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:09CV00889 JCH |
| ) | |
| TRAVELERS CASUALTY AND ) | |
| SURETY COMPANY OF AMERICA, ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel (Doc. No. 11). This Motion is fully briefed and is ready for disposition.

## **STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting discovery to explain why discovery should be limited. Liberty Mut. Fire Ins. Co. v. Centimark Corp., No. 4:08CV230, 2009 U.S. Dist. LEXIS 19007, at *2 (E.D. Mo. Mar. 4, 2009) (citing Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)). "Bare assertions that the discovery requested is overly broad, unduly burdensome, oppressive, or irrelevant are ordinarily insufficient to bar production." Liberty Mut. Fire Ins. Co., 2009 U.S. Dist. LEXIS 19007, at *2-3 (E.D. Mo. Mar. 4, 2009) (citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)).

**DISCUSSION**

A.   Introductory, Boilerplate Objections

At the introduction of Defendant's responses to Plaintiff's discovery requests, Defendant provided blanket, boilerplate objections that allegedly applied to all of its discovery responses. Plaintiff claims that Defendant is withholding documents based upon its introductory objections. (Memorandum in Support of Plaintiff's Motion to Compel ("Memorandum in Support"), Doc. No. 12, pp. 6-7; Reply Memorandum in Support of Plaintiff's Motion to Compel ("Reply"), Doc. No. 15, pp. 4-5). Defendant states that it is not withholding documents based solely upon its introductory, boilerplate objections. (Defendant's Response in Opposition to Plaintiff's Motion to Compel ("Response"), Doc. No. 14, p. 14). Rather, Defendant claims that it reiterated its specific objections in each responses to each of Plaintiff's requests. (Response, p. 14). Accordingly, Defendant argues that the issue of the boilerplate objections is moot. Defendant, however, does not appear to argue that it would be proper to withhold documents solely based upon these introductory discovery objections.

Under Fed. R. Civ. P. 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity." <u>See also</u> Fed.R.Civ.P. 34(b)(2)© ("An objection to part of a request must specify the part and permit inspection of the rest."); Fed.R.Civ.P. 34(b)(2)(B). The party resisting discovery must show specifically how each interrogatory or document request is not relevant or how each question is overly broad, burdensome or oppressive. <u>St. Paul Reinsurance Co.</u>, 198 F.R.D. at 512 (citations omitted). Neither party seems to dispute that withholding documents based upon non-specific, introductory objections would be improper. <u>See</u> <u>Convertino v. United States DOJ</u>, 565 F. Supp. 2d 10, 13 (D.D.C. 2008) (overruling general objections in their entirety). To the extent that Defendant still is withholding documents based solely upon its boilerplate, introductory objections,

the Court overrules Defendant's introductory, boilerplate objections. See E.D. Mo. L.R. 37-3.04(C); White Cap Constr. Supply, Inc. v. Tighton Fastener & Supply Corp., No. 8:08CV264, 2009 U.S. Dist. LEXIS 106096, at *4, n. 1 (D. Neb. Nov. 13, 2009) ("The parties are advised that this court will, on its own volition, disregard all boilerplate general objections asserted by any party.").

B.  Similar Policies, Claims and Lawsuits of Other Insured

In interrogatories numbers 4[1] and 8[2] and document requests numbers 13[3], 15[4], and 33 through 36,[5] Plaintiff seeks discovery regarding similar policies, claims and lawsuits of other insureds.

---

[1] Interrogatory number 4 states "[p]lease identify all actual or threatened lawsuits filed against Travelers in the last 5 years based on Travelers['s] denial of any claims for coverage based on the insured purportedly giving untimely notice of a claim."

[2] Interrogatory number 8 states "[p]lease identify all threatened or actual lawsuits filed against Travelers in the last 5 years based on Travelers['s] denial of any claims for coverage based on any Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion."

[3] Document request number 13 seeks "[a]ll versions, including any drafts, of any Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion found, either individually or collectively, in any Other Policy issued to an insured for the period January 1, 2004 to the present."

[4] Document request number 15 seeks "[a]ll versions, including any drafts, of any Other PDO [any Private Company Directors and Officer Liability part of any Other Policy], which contains an Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion issued to an insured for the period January 1, 2004 to the present."

[5] Document request number 33 seeks "[f]rom January 1, 2004 to the present, the claims files, underwriting files, claims handling manuals, and claims handling guidelines applicable to, relating to, or covering any Other D&O Claim where coverage was provided or denied, in whole or in part, when a tortious interference claim(s) was asserted against the insured."

Document request number 34 seeks "[f]rom January 1, 2004 to the present, the claims files, underwriting files, claims handling manuals, and claims handling guidelines applicable to, relating to, or covering any Other D&O Claim where coverage was provided or denied, in whole or in part, when a breach of the implied covenant of good faith and fair dealing claim(s) was asserted against the insured."

Document request number 35 seeks "[f]rom January 1, 2004 to the present, the claims files, underwriting files, claims handling manuals, and claims handling guidelines applicable to, relating to, or covering any Other D&O Claim where coverage was provided or denied, in whole or in part, when a breach of the implied of an implied contract claim(s) was asserted against the insured."

1. Ambiguity

Plaintiff claims that it is entitled to documents regarding similar policies because the Sunnen Policy is prone to ambiguity and, therefore, the parties are permitted to rely on extrinsic evidence to interpret the policy. (Memorandum in Support, p. 8).[6] Plaintiff claims that it may gain some insight regarding how Defendant interpreted and applied the provisions and exclusions in the Sunnen Policy in similar policies in the past. (Memorandum in Support, p. 9). Plaintiff argues that a draft contract already provided by Defendant demonstrates an ambiguity that could "undermine Travelers'[s] contention in this case[.]" (Memorandum in Support, p. 10).[7] Accordingly, Plaintiff seeks extrinsic evidence, including similar policies, claims and lawsuits of other insureds, from Defendant.

Defendant claims that Plaintiff's requests for documents related to other policies are overbroad and irrelevant. According to Defendant, the majority of courts refuse to require insurers to produce other policyholder claim material because such information is irrelevant to the subject

---

Document request number 36 seeks "[f]rom January 1, 2004 to the present, the claims files, underwriting files, claims handling manuals, and claims handling guidelines applicable to, relating to, or covering any Other D&O Claim where Travelers denied coverage, in whole or in part, on the basis of an Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion."

[6]"The issue of the ambiguity of the policies is for the trial court to decide." Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 99, 105 (D.N.J. 1989).

[7]Plaintiff notes that the "express contract" exclusion, relied on by Travelers to deny coverage, provides that Travelers will not cover any Claim "for any actual or alleged liability of [Sunnen] under any express contract or agreement." (Sunnen Policy, Doc. No. 12-2, p. 5). The arbitration involved claims for breach of the express contract, breach of the implied covenant of good faith and a fair dealing, and for tortious interference. (Reply, p. 3). The "express contract" exclusion in an earlier draft of the Policy is broader and excludes any claim "for or arising out of or in consequence of any actual or alleged liability of the Insured Organization under an express contract or agreement." (Memorandum in Support, p. 10; Doc. No. 15-2, p. 4). Plaintiff argues that it should be allowed to discover whether Travelers covered implied contract claims under the earlier draft of the policy, which is broader than the current draft. If Travelers covered implied contract claims under the earlier version then that would cut against Travelers's position that Sunnen's claim for coverage based on an implied contract claim is excluded pursuant to the "express contract" exclusion in the Sunnen Policy.

claim. Defendant cites to several cases to support their claim that the interpretations or decisions related to other policies are not relevant to the Sunnen Policy. (Response, pp. 5-8)(citing cases).[8] Defendant argues that the Court must look only at the language of "this Policy" in "evaluating and enforcing the disputed contract conditions at issue in this litigation." (Defendant's Surreply in Response to Plaintiff's Motion to Compel (Surreply), Doc. No. 21, p. 2) (emphasis in original). Defendant asserts that Plaintiff provided no support for this line of inquiry and it is irrelevant to the case at hand. (Response, pp. 5-6); see Fidelity & Deposit Co. v. McCulloch, 168 F.R.D. 516, 526 (E.D. Pa. 1996)(court refused to compel production of other court cases in which the relevant policy provisions were disputed because it would constitute a "fishing expedition"). Defendant asserts that

---

[8]Several of the cases cited by Defendant can be differentiated from this case. For example, in Nationwide Mut. Ins. Co. v. LaFarge Corp., No. H-90-2390, 1994 U.S. Dist. LEXIS 3851 (D. Md. Jan. 3, 1994), the district court held that "the probative value of the documents sought by Lafarge if admitted in evidence at the trial, would be substantially outweighed by the danger of confusion of the issues, misleading the jury, and by considerations of undue delay and waste of time." Id. at *21. The district court noted that "Lafarge has not limited the scope of its discovery requests to cases involving policies and facts similar to those present in this litigation." Id. at *22. Here, Plaintiff has limited its discovery requests to "similar" cases.

Likewise, in Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 99 (D.N.J. 1989) Leksi sought information regarding the manner in which the insurers "applied the policy language to claims similar to Leksi's made by other insureds." Id. at 105. The defendants argued that such information was irrelevant. Id. The Leski court held that "[s]uch information would be relevant to the insurers' interpretation of the language of an identical policy in an identical situation. Id. (citing Independent Petrochemical Corp. v. Aetna Casualty & Surety Co., 117 F.R.D. 283 (D.D.C. 1986), aff'd 1987 U.S. Dist. LEXIS 15073, 27 E.R.C. 1769 (D.D.C. 1987)). The Leski court, however, did not allow discovery of these identical policies because it found that the information "concerning the files of other insureds [was] disproportionate to the declaratory judgment action it has filed." Id. at 106. Here, the Court finds that the similar policies are relevant and that discovery of such material would not be disproportionately burdensome in comparison to the litigation. This litigation involved a claim for five million dollars. As discussed herein, Plaintiff has offered to limit these discovery requests to make them less burdensome to Defendant. Accordingly, this Court finds, as the Leski court did, that this information is relevant and that it is also not unduly burdensome.

Plaintiff supports its "ambiguity" argument solely with a faulty comparison of the Sunnen Policy to the language of an earlier version of the Travelers's Director and Officer Liability Coverage Part. (Surreply, p. 3). Defendant claims that the language of the current exclusion can be enforced according to its "plain and ordinary meaning," regardless of prior versions of the policy. (Id.) Defendant asserts that "[a]ny debate about ambiguity is necessarily independent of, and irrelevant to, this discovery debate here." (Surreply, p. 3).

The parties in this case are currently engaged in discovery, which requires a party provide discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Although Defendant may disagree with Plaintiff's claim that the Sunnen Policy is ambiguous, that issue is not before the Court. See <u>Machinery Movers v. Fidelity and Deposit Co. of Mary</u>, No. 06c2539, 2007 U.S. Dist. LEXIS 78376, at *9 (N.D. Ill. Oct. 19, 2007) (whether policies are ambiguous not before the court; defendants' underwriting files and communications with industry associations were relevant and discoverable). Assuming that the Sunnen Policy is ambiguous, as Plaintiff claims, then extrinsic evidence would be relevant. Plaintiff developed this reasonable basis for the Court to determine that similar policies, lawsuits and claims are relevant solely for purposes of discovery. Plaintiff's claim that the Sunnen Policy is ambiguous has met the "low threshold" to make the materials requested discoverable. <u>Id.</u> at *9-10. Defendant can raise these grounds for excluding this extrinsic evidence as part of a motion in limine or at trial. <u>Id.</u> at *10.

2. Prejudice

Plaintiff claims that the documents regarding similar policies, claims and lawsuits of other insureds are also relevant because they may show that Defendant was not prejudiced by the delay in

notifying Travelers of the arbitration claim. In response, Defendant claims the documents at issue are not relevant because Defendant is not required to establish prejudice under a claims-made policy, such as the one with Sunnen. (Response, p. 8). Travelers asserts that, even if it accepted coverage of a different claim for business reasons, its decision on a different claim does not impact the claim in this case. Defendant also complains that Plaintiff did not define what constitutes a "similar" policy, claim or lawsuit for purposes of these requests. (Response, p. 9).

Plaintiff argues that the Sunnen policy is a "claims-made" policy, not a "claims made and reported policy." (Reply, p. 7); see also Pension Trust Fund v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) ("Claims-made policies can be further classified as either claims-made-and-reported policies, which require that claims be reported within the policy period, or general claims-made policies, which contain no such reporting requirement."). In support of this position, the Policy Declarations provide that the Sunnen Policy covers claims "first made against the insureds during the policy period." (Doc. No. 15-4); see also Sunnen Policy, Doc. No. 12-2, p. 2 ("A Claim shall be deemed to be made on the earliest date such written notice thereof is received by an Executive Officer [of the Insured Organization, Sunnen]."). "This provision does not condition coverage on notification to the insurer during the policy period or extended reporting period." Jones v. Lexington Manor Nursing Ctr., L.L.C., 480 F. Supp. 2d 865, 869 (S.D. Miss. 2006). Plaintiff acknowledges that the "Policy expressly required that notice of any such claims be provided to Travelers 'as soon as practicable.'" (Response, p. 2). Plaintiff asserts that, absent a set reporting requirement to the insurer, the insurer must show prejudice from the delay in reporting to avoid coverage. (Reply, p. 8) (citing Pension Trust Fund, 307 F.3d at 956; see also Oakland-Alameda County Coliseum, Inc. v. Nat'l Union Fire Ins. Co., 480 F. Supp. 2d 1182, 1196 (N.D. Cal. 2007) ("The Ninth Circuit has held that, under California law, the 'notice prejudice' rule applies to 'claims-made' policies.").

According to Plaintiff's theory of this case, Defendant must prove prejudice as a matter of law. The parties have not fully briefed the issue of whether Defendant must prove prejudice so this Court need not decide this issue at this time. If the Defendant must prove prejudice, then Defendant's decisions regarding other, similar policies could be relevant. Plaintiff should be able to discover information and documents sought in interrogatories numbers 4 and 8 and document requests numbers 13, 15, and 33 through 36, regarding Defendant's interpretations of similar policy provisions.

   3.  Burden

Defendant also claims that requiring it to respond to Plaintiff's discovery requests would be overly burdensome. (Response, p. 9). Defendant claims that it has received over 11,000 director and officer policy claims since January 1, 2004, and no electronic search can be performed to identify specific causes of action asserted in the underlying litigation against the insured. (Response, p. 9).[9] Travelers claims that the time required to review this volume of documents would be infeasible for Defendant.

Travelers has previously made this argument in response to similar discovery requests. In <u>Lighthouse Plastics, LLC v. Travelers Property Casualty Insurance Co.</u>, No. 3:06cv65 (N.D. Miss. Nov. 28, 2007), the plaintiff sought discovery from Travelers regarding Travelers's coverage analysis and decisions in other, similar copyright or trademark cases. (Doc. No. 15-8). Travelers apparently objected to the discovery on the basis that its database program could not search for the information plaintiff sought. The district court nevertheless ordered Travelers to produce the information

---

[9]Defendant claims that, assuming a half-hour per file, it would three years for two employees to conduct the search requested by Sunnen. (Response, p. 10).

requested because the "plaintiff will not be denied discovery of relevant information because of Travelers'[s] election to have an inadequate mens of accessing data."[10]

Plaintiff has proposed to limit this request by the ten earliest and ten latest responsive claims during the time period at issue. Plaintiff also has offered to limit its searches to the claim offices that handled Sunnen's claim for coverage. The Court will grant Plaintiff's Motion to Compel the information and documents sought in interrogatories numbers 4 and 8 and document requests numbers 13, 15, and 33 through 36 but limits these requests to the parameters purposed by Plaintiff. Defendant shall produce this information within fifteen (15) days of the date of this Order.

C.  Reinsurance Agreement

Document request number 39 seeks "[a]ny Reinsurance Agreement relating to the Policy or relating to any Other Policy containing an Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion." (Doc. No. 12-4). Despite the broad language in the document request regarding "any Other Policy," it appears that Plaintiff is limiting this request to the reinsurance agreement, if any, applicable in to this particular case. (Memorandum in Support, p. 12). Defendant admits that the reinsurance agreements applicable to the Sunnen policy "could be relevant." (Response, p. 12). The Court orders Defendant to produce the reinsurance agreement applicable to the Sunnen policy.

---

[10]In its Surreply, Defendant attempts to distinguish the Lighthouse Plastics, LLC case because Lighthouse Plastics limited its discovery request to claims brought by other insureds who had their principal place of business in Mississippi. (Surreply, p. 5, n. 3). Defendant asserts that Plaintiff's offer to limit the searches to the claim offices "which actually handled Sunnen's claim for coverage" is without effect because that includes Travelers's Home Office, which co-manages claims from all offices across the country. (Id.) For its part, however, Travelers does not make any concessions about how it would narrow the search to make it less burdensome. Absent any proposed alternative, the Court is reluctant to fashion a proposal from whole cloth, particularly when Plaintiff has made several proposals to narrow the scope of the requests.

Federal courts have held that reinsurance agreements should be disclosed as part of a party's initial disclosures under Fed.R.Civ.P. 26, which provides that "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed.R.Civ.P. 26(a)(1)(iv). Plaintiff correctly points out that none of the cases in Defendant's Response involved the production of reinsurance agreements as part of the party's initial disclosures.[11] This Court holds that Defendant's reinsurance agreements are discoverable. Machinery Movers, 2007 U.S. Dist. LEXIS 78376, at *10. Defendant shall produce the reinsurance agreement, if any, applicable to the Sunnen Policy, within fifteen (15) days of the date of this Order.

D.  Audits Concerning Sunnen's Claim for Coverage

In document request number 38, plaintiff requests "[a]ll documents relating to any internal or external audits since January 1, 2004 relating to either: (a) Sunnen's Claim for Coverage; or (b) any Other D&O Claim under any Other Policy that contains an Other Reputation Exclusion, Other Contract Exclusion, or Other Fraud Exclusion." (Doc. No. 12-4).

In its Response, Travelers states that no audits relating to Sunnen's claims have been performed. (Response, pp. 12-13; see also Reply, p. 14). Travelers further agrees to supplement its production in the event that an audit on Sunnen's claims is performed. (Response, p. 13). Thus, the only point of contention between the parties is responsive information regarding audits of other claims for coverage including similar policies and exclusions as in Sunnen's Policy.

---

[11]Although cited in Defendant's Response, in Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc., No. 01-cv-2394, 2002 U.S. Dist. LEXIS 15082 (E.D. Pa. July 29, 2002), the Court held that "because a money award is sought in the instant action, Fed. R. Civ. P. 26(a)(1)(D) mandates that AIG **disclose the reinsurance agreement**." Id. at *9 (emphasis added). In addition, Catholic Mutual Relief Society v. Superior Court, 42 Cal. 4th 358 (Cal. 2007) does not involve the application of the federal rules of civil procedure.

The Court will allow discovery of this information for the same reason it allowed discovery of the information regarding interpretations of other claims in Section B. Defendant shall produce this information within fifteen (15) days of the date of this Order.

E.     Other Missouri Counsel

In interrogatory number 5, Plaintiff asks Defendant to "[p]lease identify all Missouri law firms engaged by Travelers, or engaged by an insured and consented to by Travelers, to defend any claims against an insured whose Other Policy placed a duty to defend or duty to pay an insured's defense costs, [sic] on Travelers. Such request should be limited in scope to the last 5 years." (Doc. No. 12-3). Defendant objected to this request on the basis that it is overbroad and irrelevant.

Plaintiff claims that this information is relevant to Defendant's claim that Sunnen's choice of arbitration counsel in the underlying litigation prejudiced Defendant. (Memorandum in Support, p. 13; Reply, p. 15).[12] Travelers argues that it is not required to demonstrate prejudice in this case. (Response, p. 14). In addition, Travelers argues that its choice of counsel in other cases on unrelated facts has no bearing on the counsel for this particular case. (Response, p. 14).

The Court finds that Plaintiff is entitled to this information at this stage of litigation. As previously discussed, the Court found that discovery related to a potential claim by Defendant that it was prejudiced is relevant. The Court orders Defendant to provide a list of the law firms retained to defend director and officer policy claims in excess of $500,000 for the last five years in Missouri

---

[12]Plaintiff claims that it offered to limit this interrogatory to the particular type of claim involved, or claims involving a certain amount, but Defendant rejected these suggestions. (Reply, p. 15).

- 11 -

and any instances in which Travelers used Spencer Fane for any case in Missouri for the last five years.[13] Defendant shall provide this information within fifteen (15) days of the date of this Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's (Doc. No. 11) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant shall supplement its discovery responses in accordance with this Court's Order within fifteen (15) days of the date of this Order.

Dated this 25th day of February, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[13]Plaintiff offered this proposal in its Reply. (Reply, p. 15). Defendant did not address this subject or Plaintiff's offer in its Surreply.